IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:16-CR-00008 |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | |
| MATTHEW WILIAM GUST, | |
| Defendant. | |

The United States of America, by Christopher C. Myers, United States Attorney for the District of North Dakota, and Megan A. Healy, Assistant United States Attorney, and Dana Mulhauser, Trial Attorney in the Civil Rights Division, files the following memorandum in aid of sentencing. The sentencing hearing is currently scheduled for Tuesday, September 6, 2016 at 1:30 p.m.

**I.   FACTUAL BACKGROUND**

On December 8, 2015, Defendant Matthew Gust set fire to the Juba Café, a Somali restaurant in Grand Forks. The fire, which was set at around 2 a.m., did not injure anyone, but it caused more than $250,000 worth of property damage, including damage to neighboring businesses, and closed down the restaurant indefinitely.

Gust's animus toward Somalis began well before December 8. The FBI investigation revealed that Gust had a strong dislike for Somalis and did not want them living in the Grand Forks area. When encountering Somalis, he would frequently get angry and describe them using the word "nigger". He told friends and co-workers that he

thought Somalis "needed to go away" and that he would "do something" about it or "take care of it" or "kick[] all Somalians' asses." He made at least one prior visit to Juba Café in the hopes of antagonizing its Somali patrons and employees.

Gust developed a plan to start a fire that would intimidate and interfere with the Somali employees and customers of Juba Café because of their national origin. Early in the morning of December 8, 2015, Gust drove to a gas station near Juba Café and purchased a small amount of gasoline, which he used to fill a beer bottle, turning that bottle into a Molotov cocktail. Gust then drove to Juba Café and donned a face mask. He broke a hole through the front window of the Café with his fist. Gust lit the Molotov cocktail and threw it through the Café window, then fled.

The fire started by Gust and the smoke that emerged from it caused significant damage to the café as well as the business next door, a halal grocery store, and to a cosmetology school located in the same building. Juba Café and the neighboring grocery store have remained closed since the fire. Because of the fire, the owners have suffered severe financial losses. Those losses are described in more detail in Exhibit 1.

## II.  PLEA AGREEMENT

On May 19, 2016, the Defendant pleaded guilty pursuant to a plea agreement to a two-count information charging malicious use of explosive materials and interference with a federally protected activity, in violation of 18 U.S.C. §§ 844(i) and 245(b)(2)(C) and (F).  The plea agreement includes joint recommendations to the Court by both parties, but the agreement does not bind the Court to a particular sentence. Key provisions of the plea agreement include:

- The parties jointly recommend a 180-month sentence on Count 1 and a concurrent 120-month sentence on Count 2;
- The parties agree that the applicable base offense level is 24, with a three-point upward adjustment because the victims were selected because of their national origin, and a three-point downward adjustment for acceptance of responsibility;
- The parties agree that a ten-point upward departure is warranted under U.S.S.G. § 5K2.6 because a weapon or dangerous instrumentality was used in the commission of the offense.

## III. SENTENCING RECOMMENDATION

### a. Sentencing Guideline Range

When fashioning an appropriate sentence for a defendant, a court must first consider the applicable guidelines range under 18 U.S.C. § 3553(a)(4). United States v. Hernandez, 518 F.3d 613, 616 (8th Cir. 2008). Although the sentencing guidelines are advisory, they are the "starting point and the initial benchmark" for federal sentencing. Id. at 616, quoting Gall v. United States, 552 U.S. 38, 49 (2007). Once a court has determined the appropriate sentencing range, it should then consider that range in light of the other relevant § 3553(a) factors. Hernandez, 518 F.3d at 616.

The Presentence Investigative Report correctly calculates the Defendant's offense level is 27. See PSR ¶19; U.S.S.G. § 4B1.4(b)(3)(B). The United States recommends a 2-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a). The United States further moves for an additional 1-level downward adjustment for timely notifying the United States of defendant's intention to enter a guilty plea under U.S.S.G. §3E1.1(b). This results in a total offense level of 24.

As calculated under Chapter Four, Part A, defendant falls in Criminal History Category III. See PSR ¶45; U.S.S.G. § 4B1.4(c)(1).  A total offense level of 24 and a Criminal History Category of III yields a guideline range of 63-78 months.

### b. Sentencing Departures and Variances

After determining the applicable Guidelines range, the court must consider the sentencing factors enumerated in 18 U.S.C. § 3553(a). Both the Government and the Defendant acknowledged as part of the plea agreement that a Guideline sentence is not adequate punishment in this case. The plea agreement reflects this understanding in two ways. One is that the plea agreement includes a joint recommendation that an upward departure of 10 levels is appropriate under U.S.S.G. § 5K2.6. The second is that the parties jointly agreed to recommend a 180-month sentence.

Section 5K2 of the Sentencing Guidelines includes policy statements that set forth the standards for departing from the applicable Guideline range based on offense and offender characteristics that are not properly accounted for in the Guidelines. See U.S.S.G. § 5K2.0. One of those provisions is § 5K2.6, which covers weapons and dangerous instrumentalities. That section reads:

> If a weapon or dangerous instrumentality was used or possessed in the commission of the offense the court may increase the sentence above the authorized guideline range.  The extent of the increase ordinarily should depend on the dangerousness of the weapon, the manner in which it was used, and the extent to which its use endangered others.  The discharge of a firearm might warrant a substantial sentence increase.

Id.; see also United States v. Joshua, 40 F.3d 948, 951 (8th Cir. 1994). That provision should be the basis for an upward departure in this case. A Molotov

4

cocktail is a dangerous instrumentality under the terms of § 5K2.6. The Defendant threw that device into the nerve center of Grand Forks' small Somali community – the place where people could share a meal, eat familiar food, and socialize. The restaurant owners told FBI investigators that they frequently work past midnight to prepare food for the following day, so the lack of injuries on this day was a matter of luck. In carrying out this crime, the Defendant used the incendiary device in a way calculated to cause massive disruption and fear, meriting a significant upward departure.

The Presentence Investigation Report also notes—and the United States supports—the applicability of Guideline § 5K2.5, which supports departing upward from the Guidelines range in case of property damage or loss. "The extent of the increase ordinarily should depend on the extent to which the harm was intended or knowingly risked and on the extent to which the harm to property is more serious than other harm caused or risked by the conduct relevant to the offense of conviction." U.S.S.G. § 5K2.5. In this case, the Guidelines calculation makes no account for the severe losses of property and earnings suffered by the victims. Accordingly, an upward departure is warranted.

Other factors listed under § 3553(a) also militate in favor of an upward variance. The nature and circumstances of the offense show that the Defendant engaged in behavior calculated to terrify a community. The victims of this crime are not only the owners and patrons of Juba, they are the other Somalis in Grand Forks who live in fear, knowing that their community was targeted because of its

national origin. There is a need for deterrence to demonstrate not only to this Defendant but to other potential perpetrators that violence on the basis of national origin is not tolerated by this Court or by the federal system of justice. See Ferguson v. United States, 623 F.3d 627, 632 (8th Cir. 2010) ("Congress specifically made general deterrence an appropriate consideration under section 3553(a)(2)(B), and we have described it as one of the key purposes of sentencing"). And finally, this Defendant has shown a need for deterrence beyond what his criminal history reflects. He has regularly reoffended after being paroled or released from custody. In order to protect the public from further crimes, an above-Guidelines sentence is warranted.

### c. Sentencing Recommendation

For the reasons stated above, the Government requests that the Court apply the 10-point upward departure under § 5K2.6, as recommended by both parties in the plea agreement. This departure would raise the Defendant's offense level to a 34, which is 188-235 months, given his criminal history category of III.

The Government believes, in light of the proposed sentencing departure and the factors enumerated in 18 U.S.C. §3553(a), that an overall sentence of 180 months on Count 1 and 120 months on Count 2, served concurrently, is sufficient but not greater than necessary.

## IV. RESTITUTION

This crime caused significant property damage to the Juba Café and to the businesses that surrounded it. The Government has summarized those claims in a chart

attached as Exhibit 1. Pursuant to that chart and the supporting documentation, which has been submitted to the Probation Office, the Defendant should be ordered to pay $268,927.72 in restitution.

## V. CONCLUSION

For the reasons set forth above, Government requests that the Defendant be sentenced to 180 months imprisonment on Count 1, 120 months imprisonment on Count 2, and three years of supervised release, and be ordered to pay restitution in the amount of $268,927.72.

Dated: August 31, 2016.

                                      CHRISTOPHER C. MYERS
                                      United States Attorney

By:   */s/ Dana Mulhauser*
       DANA MULHAUSER
       Trial Attorney
       U.S. Department of Justice
       Civil Rights Division
       601 D Street, NW
       Washington, DC 20530
       (202) 305-0007
       Dana.Mulhauser@usdoj.gov
       Attorney for the United States

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:16-CR-00008 |
| Plaintiff, | **CERTIFICATE OF SERVICE** |
| v. | |
| MATTHEW WILIAM GUST, | |
| Defendant. | |

I hereby certify that on August 31, 2016, the following document:

UNITED STATES' SENTENCING MEMORANDUM

was filed electronically with the Clerk of Court through ECF, and that ECF will send a Notice of Electronic Filing (NEF) to the following:

**Theodore T. Sandberg**
tsandberg@rrv.net


Dated: August 31, 2016.

> */s/ Dana Mulhauser*
> DANA MULHAUSER
> Trial Attorney
> U.S. Department of Justice
> Civil Rights Division
> 601 D Street, NW
> Washington, DC 20530
> (202) 305-0007
> Dana.Mulhauser@usdoj.gov

8