IN THE UNITED STATES DISCTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CASE NO.: 3:16-CR-00008 |
| | ) | HONORABLE UNITED STATES |
| | ) | JUDGE R. ERICKSON |
| MATTHEW GUST | ) | |
| DEFENDANT. | ) | DEFENDANT GUST'S |
| | ) | SENTENCING MEMORANDUM |

Now comes defendant Matthew Gust by and through his attorney Theodore T. Sandberg, and submits this Sentencing Memorandum for review by the Court and the United States prior to the Defendant's Sentencing.

## I. General Background:

Defendant has pled guilty to Malicious Use of Explosive Materials (Count I) and Interference with a Federally Protected Activity (Count II). Defendant is currently in custody in Fargo, North Dakota. He is now to be sentenced. A presentence investigation report has been completed.

A general summary of the facts of this case are contained within change of plea document as filed with the Court.

What is not discussed in detail in any of the discovery or the Court filings is the motive for Mr. Gust's illegal actions.  In the time leading up to the arson, Mr. Gust was only just out of prison, working at a local sandwich shop in Grand Forks with a female family member (who was his manager and boss).  Mr. Gust was doing well at work.  He had no issues with tardiness or job performance.  As a recently released ex-prisoner, Mr. Gust was in the process of building his life, one minimum wage shift at a time.

He was working a shift with his relative/boss when the sandwich shop was robbed at gunpoint by several men of Somali decent.   His relative was mistreated and forced, at gun point, to give the robber money.   Gust was forced at gunpoint and locked into the store's walk-in-cooler.  He was unable to assist his relative as she was being threatened and robbed.  Gust feared for her life as much as he feared for his own life.

The incident was horrific for Gust.   He was unable to protect his family, and he was unable to protect himself.   His long-standing anger management issues conspired with his natural predilection to empathically protect his friends and family into a  very bad mix.  Gust was unable to sleep. Unable to cope.  He was furious at the situation and even more furious as his impotence in the face of the danger.  He grew sick and distant.   His mental health deteriorated.  And at this point, after some time, Gust turned to the only thing that could cool his angry and frustrated mind:  Narcotics and booze.

Meth and booze were then added to the already troubled soul.  Gust did not harbor any preexisting racial animosity towards any race, specifically anyone of any Somali background.   But after the robbery, his mental health deteriorated and his natural common sense was eroded by use of drugs and alcohol.

One night while watching the evening news, he saw that some person had defaced the Juba Café in Grand Forks with allegedly racially charged graffiti.   This

vandalism and the associated news story sparked the idea in Gust's head that perhaps there was a way to strike back at the sandwich shop robbers and gain some semblance of balance to his thoughts.

After a night of drinking, and a day after ingesting meth, Gust created the Molotov cocktail and decided he would settle the score with the robbers by damaging their national associates' gathering place.   He would burn the Juba Café.

This scenario and background much must be understood if anyone is to comprehend this case clearly and correctly:  This attack was not against the local Somali community; this was Gust's way of striking back at the people who robbed him and humiliated him and tormented his family member.   This was not a racial attack per se, but instead was an attack on a building that would, Gust hoped, cause suffering and pain upon the people who had caused himself and his family suffering and pain:  The robbers.

Think of this case this way:  "You hurt my family, I will hurt your family."

This explanation is not an excuse.   It is not a mitigating factor.  Gust's acceptance of the plea agreement and a prison sentence clearly show that Mr. Gust knows what he did was wrong, and he knows how much he hurt and damaged the direct victims (the shop owners) and the indirect victims (all citizens of North Dakota who are damaged by this crime).

But the racial component is not as clear-cut or as simplistic as some of the narratives that have been pushed by others (outside of this case) when considering this crime.

Mr. Gust is not a racist, a white supremist, or on any sort of social crusade. Far too many people in today's world will apply tragic situations to their own personal political or social narratives and/or their own personal understanding of the world around them, and in doing so mistaken apply to various situations their

own beliefs and biases.  Mr. Gust rejects that application of the outsider's simplistic biases and beliefs to his actions.   He rejects the arguments of both those who cheered this crime as some sort of "good thing;" and those who attempted to use this crime as some overarching "teaching point" to prove a generic assertion of underlying societal racism or some other blithering hyperbole.   Gust's motives were based on none of those things.

    Mr. Gust is a very tough young man.  He had a tough upbringing, a tough background, and has lived a tough life.  He has lived in a world where fairness and justice are meted out at street level; and meted out as harshly as necessary often with physical violence.   If the scales are out of balance out on the street, then there must be some way to get the scales back into balance.   If he is hurt or damaged; or his family or friends are hurt or damaged; then that makes the scales off balance.  And in order to get the scales back into balance, there must be some price paid – at least in Mr. Gust's lifelong understanding of his world.   Mr. Gust is learning that this street-based-scale-balancing is neither legal, nor correct, nor real justice, nor does it ultimately solve any problems.  Further, Mr. Gust is learning that this street justice always causes more trouble than good, and often leads to criminal activity.  And worst of all, this sort of street justice almost always damages the innocent more than the guilty!

    And again, this is neither an excuse nor mitigation, but only the truth of the world as Mr. Gust perceived it, at the time of the crime.   Mr. Gust did not know who robbed his store, who pointed a gun at him, who pointed a gun at his family, or who traumatized both him and his family member.   But he knew (or at least thought he knew) where the robbers friends and family liked to hang out and find peace.  How can the robbers' friends and family have a peaceful place to gather and socialize, when Gust himself is so  injured? How can the friends and families of

these robbers be so free and comfortable when the cosmic scales of justice are so horribly out of whack – at least for Mr. Gust's thought process?

Oh, now he might not be able to find the actual robbers and take care of business himself – but he thought he knew a way to hurt them, anyhow.  He thought he had a way to achieve his form of street justice.  And he thought he had a plan to hurt these robbers *his* way; hurt them the only way he thought could reach the robbers; hurt them in such a way as to bring balance the scales.

Mr. Gust is learning lessons the hard way in this case.   As the Court can see from his past record, Mr. Gust often learns lessons the hard way.   This time, it is hoped and prayed by Mr. Gust, his family, and the whole community of Grand Forks and North Dakota, that Mr. Gust finally gets the help he needs; and the counselling he needs; to finally learn THIS lesson once and for all, and to never engage in criminal actions ever again.

## II. General Legal Review and Case Specific Discussion  of 18 U.S.C. sec. 3553(a), et al:

The Supreme Court has given judges the power to impose sentences that are not greater than necessary to satisfy the statutory purposes of sentencing, to consider all of the characteristics of the offender and circumstances of the offense, to reject advisory guidelines that are not based on national sentencing data and empirical research, and to serve their function in the constructive evolution of responsible guidelines. See, United States v. Booker, 543 U.S. 220 (2005); Rita v. United States, 127 S. Ct. 2456 (2007); Gall v. United States, 128 S. Ct. 586 (2007); Kimbrough v. United States, 128 S. Ct. 558 (2007); See also, Spears v. United States, 129 S. Ct. 840 (2009); Nelson v. United States, 129 S. Ct. 890 (2009).

Defendant asserts that there are mitigating factors which could be considered, along with the basic guidelines and any potential Government motion for any downward departures, to determining his appropriate sentence in this case. Defendant argues that these factors add credence and support for the jointly recommended sentence contained within the plea agreement.

United State Code 18, sec. 3553(a), provides the Court a number of factors it may consider in determining the appropriate punishment of the Defendant so that the sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of that provision. 18 U.S.C. § 3553(a) (The Supreme Court wants the District Courts to fashion a sentence that "[i]mposes a sentence sufficient, but not greater than necessary, to achieve the goals of sentencing," <u>Kimbrough</u>, 128 S. Ct. at 570). Those factors are (in part):

(2) The need for the sentence imposed --

(A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) To afford adequate deterrence to criminal conduct;

(C) To protect the public from further crimes of the defendant; and

(D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The defendant's individual personal history should also be reviewed in light of the offense, so that his sentence is crafted to him as an individual – even if Mr. Gust is to be sentenced to an agreed-upon plea agreement. Accordingly, and for sake of clarity, Defendant will list each relevant 3553(a) factor and how he believes each applies to his life and his case, and support the proposed sentence in the plea agreement:

1) **Personal history and characteristics:**
   A) **General Personal History and Notes:**

Mr. Gust has had a very difficult life up to this point. He has been involved in the Juvenile Justice system since he was a pre-teen. He suffers from mental health and substance abuse issues, which have been the cause for almost all of his legal problems.

Mr. Gust is an articulate, understanding, passionate young man. But he has ended up with the short end of the stick at virtually every turn; at every phase of his life. He has received some mental health and addiction counselling in the past. He has anger management issues which when combined with his background and mental health needs, causes a mix in Mr. Gust that gets him into trouble.

Mr. Gust has a strong family support. It is entirely probable that the strong support is, nonetheless, unable to provide the help Mr. Gust requires to stay out of trouble. Furthermore, there is no realistic relationship with his biological father (although there has been some better connections lately), and there is a clinical showing in his medical past of significant abandonment issues. Mr. Gust also grew up with two step-brothers with whom, today, he has no real relationship. There is a likely strain in those relationships which also contributed to Mr. Gust's problematic past.

One thing that must be accounted for with Mr. Gust is his loyalty and sense of fairness; maybe some basic sense of justice. Mr. Gust is quick to take offense for others, and to defend others who are in a weaker or disadvantaged position. He is quick to transfer his anger on behalf of friends and family who he believes, rightly or wrongly, are being mistreated. This should be seen as an admirable trait, as long as his natural empathetic instincts are properly directed. As the Court can see

from Mr. Gust's criminal past, too often his empathetic instincts are directed toward quick, violent resolutions.

### B) Criminal Past:

This is not a mystery. The Court can clearly see that Mr. Gust has been involved in the criminal justice system, Juvenile and Adult, virtually his entire life. He has dealt with the "system" in both Minnesota, North Dakota, and now in the U.S. District Court.

The Government has, to their credit, not made much of Mr. Gust's criminal past except in pre-trial release hearings. The Government has chosen instead to concentrate on Mr. Gust's current offense conduct. But there can be no denying Mr. Gust's criminal past is lengthy, thorough, and significant. He has been previously incarcerated as both a juvenile and an adult for a variety of offenses.

The Court can read this record and see, however, the usual pattern. Substance abuse, combined with mental health issues, combined with anger management issues, combined with a troubled and uneasy childhood. That is not an excuse for any bad conduct, but instead is merely stated as a fact.

### C) Recovery:

Mr. Gust is a good candidate for substance abuse recovery, with the proper mental health assistance. The two must be combined.

### 2) The seriousness of the offense committed and its nature and circumstances.

The offense is deemed serious as there is an alleged racial component to the underlying arson. The facts also show, however, that the offense was committed at night, when nobody was present in the building, and nobody was hurt or intended to be hurt.

**3) The need (or lack thereof) to protect the public:**

The public would be, and will be, protected as Mr. Gust has agreed to serve a period of incarceration while he receives his mental and substance abuse counseling and treatment. With treatment and counselling, Mr. Gust will not engage in this sort of activity again.

**4) The individual defendant's need for education, training, or medical care:**

Mr. Gust does not need any physiological medical care; he does need mental health and substance abuse care. He would also benefit from job training and continued education. All of these items would work together to move Mr. Gust back into society as a useful citizen. Mr. Gust is intelligent, thoughtful, and extremely empathetic to his friends and family.

Mr. Gust is leery of the concept of some sort of racial reeducation training. He is not a racist, and the allegations which have been floated in the public square accusing him of this are misplaced. This case has a racial component, but there is much more behind this case than some broad-stroke knee-jerk charge of "racist."

**5) Punishment:**

The statutes and sentencing law have established the basic need to punish illegal activity to deter the defendant and deter others from engaging in the same activity. But the second prong of any prison sentence is corrective. In short: Can we (society) educate the defendant? Does the defendant understand why his

behavior was wrong? Can the defendant learn to avoid this wrong behavior in the future? All of the above listed discussions show that Mr. Gust is correctable. His issues are treatable and survivable.

### III.   Restitution

On the matter of restitution, the Defendant reviews 18 USC 3663 et. seq. which provides in pertinent part:

> The court, when sentencing a defendant convicted of an offense under this title, section 401, 408(a), 409, 416, 420, or 422(a) of the Controlled Substances Act (21 U.S.C. 841, 848(a), 849, 856, 861, 863) (but in no case shall a participant in an offense under such sections be considered a victim of such offense under this section), or section 5124, 46312, 46502, or 46504 of title 49, other than an offense described in section 3663A(c), may order, in addition to or, in the case of a misdemeanor, in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of such offense, or if the victim is deceased, to the victim's estate. The court may also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense. . . . . The court, in determining whether to order restitution under this section, shall consider . . .
>
>> (I)   the amount of the loss sustained by each victim as a result of the offense; and
>>
>> (II)   the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

In this case the various alleged victims are all seeking some form of financial restitution.

The numbers being bandied about are absurd, in the extreme. Insurance has covered most of the damage. Private donations have assisted in covering other shortfalls.

But most importantly, Mr. Gust has no means to make payments or to reduce this restitution amount being sought by the victims of this case. The Defendant has no money, no possessions, and will be incarcerated for the better part of the next decade and a half. Once he is released, he will need to find work for stability.

Mr. Gust therefore asks the Court to only order restitution in an amount commensurate with the insurance deductible paid by any victim.

Mr. Gust asks that the Court either waive all restitution beyond the deductible out-of-pocket costs; or in the alternative schedule a hearing in the future for the determination of the appropriateness of the restitution sought.

Of course, it is impossible to pay any restitution if Gust is in prison. Mr. Gust is willing to listen if the Government is willing to offer an amended plea agreement for less prison time in an effort to grant Mr. Gust more opportunity to work and earn and pay off a larger restitution demand. Absent that highly unlikely scenario, Mr. Gust is absolutely without any ability to pay restitution of hundreds of the thousands of dollars – even if the Court deemed that an appropriate amount.

Mr. Gust therefore requests that the Court establish a restitution amount of $3,000.00, which reflects the general out of pocket costs for insurance deductibles,

while keeping in mind Gust's total and complete inability to pay anything at this time; or in the future while incarcerated.

## IV. Prayer for Relief

Accordingly, the Defendant respectfully requests that the Court consider the arguments contained in this sentencing memorandum.

Respectfully Submitted:

                                          Dated:  8-31-16

//Ted Sandberg//
_____

By:  Theodore T. Sandberg
Attorney at Law
Olson, Juntunen & Sandberg, Ltd.
315 1st Ave. N.
Grand Forks, North Dakota   58201-5788
Phone:  701-775-4688
Fax:  701-775-2440
Email:  tsandberg@ojs-law.com
Attorney for Defendant Gust